## BRENNEMAN v. ROTH

[No. 125, October Term, 1956.]

492

*Decided March 11, 1957.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*William A. Gunter* and *Walter W. Dawson* for the appellant.

*Horace P. Whitworth, Sr.,* and *Horace P. Whitworth, Jr.,* for the appellee.

COLLINS, J., delivered the opinion of the Court.

This is an appeal from part of a decree passed by the Circuit Court for Garrett County. It appears that at a meeting of the County Commissioners of Garrett County on February 7, 1956, Aubrey C. Brenneman, one of the County Commissioners, made a recommendation that Irvin Roth, another

County Commissioner, be no longer paid for the distribution of surplus food in Garrett County.

Later an amended bill of complaint was filed by Irvin Roth, as a taxpayer of Garrett County, complainant and appellee, against Harvey D. Swartzentruber, individually, respondent; Aubrey C. Brenneman, individually, respondent and appellant here; the Board of County Commissioners of Garrett County, a corporation, respondent, hereinafter referred to as the Commissioners; and such Commissioners sitting as the Garrett County Road Board, respondent, hereinafter referred to as the Road Board.

This bill of complaint sets out the provisions of Code, 1951, Article 25, Section 26, which provides:

"It shall not be lawful for any County Commissioner, during his term of office, to hold, possess, purchase or acquire any share or interest in any agreement or contract made, entered into or concluded with any party or parties, whomsoever, by the County Commissioners of his county, in their character and capacity as such Commissioners, or to have, receive, enjoy or participate, either directly or indirectly, in any of the benefits, profits or emoluments of any such agreement or contract."

Also, Code, 1951, Article 25, Section 27, which provides:

"It shall not be lawful for any county commissioner, during his term of office, to accept, hold, purchase or acquire any claim on or against the county of which he is a commissioner, or any share or interest in such claim, which said claim has been or is to be passed upon and approved by the board of county commissioners of which he is a member."

Also, Code, 1951, Article 25, Section 28, which provides:

"If any county commissioner shall violate any of the provisions of the two preceding sections, he shall be liable to indictment, and, upon conviction, shall forfeit his office, and shall also forfeit his share in

the agreement, contract or claim, as aforesaid, as the case may be."

The bill further alleges that Irvin Roth is a Commissioner, Aubrey C. Brenneman is a Commissioner and Vice-President of that body, and Harvey D. Swartzentruber is a Commissioner and President of that body. The Commissioners sit also as the Road Board. Aubrey C. Brenneman is in the Drilling and Plumbing business in Garrett County and is assessed for personal property, tools and machinery in the name of "A. C. Brenneman et al." and is doing business in said County under the trade name of "A. C. Brenneman and Son", or in a partnership with his son, John J. Brenneman, and he has a direct or indirect interest in his son's business in Garrett County. Harvey D. Swartzentruber runs a mercantile business in Garrett County and has a direct interest therein. The Commissioners own and the Road Board controls and regulates a Rock Quarry known as "Bishop's Quarry" for the purpose of supplying stone for county road work. To provide stone it is necessary to do much heavy drilling in order to blast the stone with explosives. This drilling and blasting will cost approximately $35,000.00. The Commissioners, sitting as the Road Board, without the knowledge of Mr. Roth and without official approval or record entered upon the minutes of said Commissioners, made an agreement with Aubrey C. Brenneman, trading as "A. C. Brenneman and Son", to drill at Bishop's Quarry for the price of $2.00 a foot. William W. DeWitt, Road Engineer for Garrett County, an employee and appointee of the Commissioners, sitting as the Road Board, illegally and contrary to law, without first obtaining the approval and authority of the Commissioners, has paid "A. C. Brenneman and Son", and John J. Brenneman the total sums of $15,197.81 by vouchers and checks, the checks being endorsed by John J. Brenneman. The vouchers were illegally approved unofficially, without legal authority, by Mr. DeWitt. The approval dates on the vouchers are blank and there is no approval of any of these vouchers entered upon the minutes of the Commissioners. The Commissioners sitting as the Road

Board kept no minutes whatever. Aubrey C. Brenneman and Mr. Swartzentruber as Commissioners both unofficially and illegally approved all the aforesaid vouchers, except two which were approved by Messrs. Roth, Brenneman and Swartzentruber, the three Commissioners of Garrett County. Mr. Roth gave his approval to these two vouchers by reason of "inadvertence, ignorance of the law and certain facts". The Commissioners also, without Mr. Roth's knowledge and without any official approval by the Commissioners, sitting as the Road Board, did business with Mr. Swartzentruber's mercantile business by purchasing merchandise therefrom in the amount of $60.40. This amount was illegally paid without legal authority by Mr. DeWitt by checks which were endorsed by Mr. Swartzentruber. The vouchers were illegally approved after payment, the approval date being blank, by the three Commissioners.

The bill further alleges that the payment of the aforesaid vouchers and checks by Messrs. Aubrey C. Brenneman and Swartzentruber, though not officially entered upon the minutes of the Commissioners, sitting as the Road Board, constituted a direct violation of Article 25, Sections 26 and 27, aforesaid. The complainant, Mr. Roth, upon being informed by his counsel of the law, and after discovering all the aforesaid facts, had entered upon the minutes of the Commissioners an assertion that such contractual relations of the Commissioners should cease, and all illegal payments should be returned to Garrett County, and no further payments should be made. However, no official action was taken by the Commissioners, or sitting as the Road Board, since the motion so made came from a minority member of the Commissioners.

The bill prayed that an injunction be issued enjoining the Commissioners as such or sitting as the Road Board, and Messrs. Swartzentruber and Aubrey C. Brenneman, during their term of office as Commissioners, from entering into any agreement or making any contract "they may be interested in, directly or indirectly, and that any and all such contracts or agreements so made shall be declared to be null and void and in violation of the Statutory Laws of Maryland, and in gross

violation of Public Duty." The bill also prayed for other and further relief.

A demurrer was filed to the amended bill which was overruled. At the pre-trial conference the chancellor dismissed the Commissioners and the Road Board as respondents and left in the case Messrs. Aubrey C. Brenneman and Swartzentruber. Mr. Swartzentruber did not appeal from that part of the decree against him and that part is not before us here. The chancellor, after a full hearing, filed an opinion in which, among other things, he held void the drilling contract with John J. Brenneman. However, he did not so provide in the decree. The appeal is from the decree. The opinion does not constitute a part of the decree, and the appeal, of course, is only from the decree. *Alleghany Corporation v. Aldebaran Corporation,* 173 Md. 472, 478, 196 A. 418; *Velasco v. P. E. Church in Maryland,* 200 Md. 634, 640, 92 A. 2d 373.

There was no cross appeal. The chancellor decreed:

> "For the reasons set forth in the Opinion filed herein and dated June 19, 1956, it is this 19th day of June, 1956, by the Circuit Court for Garrett County, Maryland.
>
> "ADJUDGED, ORDERED AND DECREED:
>
> "1. That the defendant, Harvey D. Swartzentruber, be and he is hereby enjoined, while he is a County Commissioner, from selling to the Board of County Commissioners of Garrett County, or to such Board of County Commissioners, sitting as a Road Board, any goods, wares or merchandise, or from doing any business on his own account with such Board.
>
> "2. That the defendant, Aubrey C. Brenneman, as an individual and as a partner of A. C. Brenneman and Son, be and he is hereby enjoined, as long as he is a County Commissioner, from doing any business with the Board of County Commissioners of Garrett County, or with such Board of County Commissioners sitting as a Road Board; and he is further enjoined while he is a County Commissioner from acting as such during any discussions of or actions

by such Board with reference to the balance which may be due to 'John J. Brenneman' (or to 'A. C. Brenneman and Son') for drilling work performed at 'Bishop's Quarry' under the drilling contract or contracts testified to in this case.

"3. That the Board of County Commissioners of Garrett County and such Board of County Commissioners sitting as the Garrett County Road Board, their agents, servants, and employees, be and they are hereby enjoined from entering into any contract with or doing any business with any individual County Commissioner in violation of the provisions of Sections 26 and 27 of Article 25 of the Code of Public General Laws of Maryland;

"4. That the Board of County Commissioners of Garrett County, and such Board of County Commissioners sitting as the Garrett County Road Board, be and they are hereby temporarily enjoined from making any further payments on account of the drilling operations of 'John J. Brenneman' or 'A. C. Brenneman and Son' until the further order of this Court; this temporary injunction will be dissolved upon proper proof herein that the proper legal amount due for such drilling operations has been determined by agreement between the parties concerned (in the negotiations for which Aubrey C. Brenneman may not sit as a County Commissioner) or through appropriate legal proceedings.

"The Clerk will issue and cause to be served upon the various defendants the writ of injunction in accordance with the foregoing decree, annexing to each such writ a copy of this decree.

"The Court retains jurisdiction in this case to ensure appropriate compliance with this decree. The costs herein will be paid by the two individual defendants."

From the order overruling the demurrer and from the aforesaid decree, Aubrey C. Brenneman appealed here. In

this Court he dismisses his appeal from the overruling of the demurrer and stands on his appeal from paragraph 2 of the aforesaid decree.

By Chapter 1031, Acts of 1945, as amended by Chapter 663, Acts of 1951, the Commissioners are constituted the Road Board. As the chancellor at the pre-trial conference dismissed the Commissioners and the Road Board as respondents in the case and as the respondents were not parties at the time the decree was passed, paragraphs 3 and 4 must fall and be stricken from the decree. The question therefore before us relates to paragraph 2 of the decree.

Testimony was taken in open court before the chancellor. The Road Board on March 24, 1955, made a contract with John J. Brenneman to drill 1,500 feet or more. The price later agreed upon was $2.00 per foot. Under this contract John claims that $16,438.00 is still due him. Mr. Aubrey C. Brenneman in his own behalf testified in part as follows. He was elected a County Commissioner of Garrett County on November 2, 1954, and assumed office on December 2, 1954. He had been in the drilling business since 1930. He has one son, John J. Brenneman. He traded as sole proprietor of his drilling business until 1948, when he took in his son as a partner. John had returned from the Navy in 1945 or 1946. No written articles of partnership were written up. The partnership was verbal. John continued as a partner until the summer of 1954. At that time his, Aubrey's, health was not good. He was becoming deaf and had diabetes. He also had had pneumonia several times. He was very active in the business until the summer of 1954. Up until that time he had done heavy lifting, drilling, strenuous work, sharpening tools and changing bits. In 1954 he ceased working on the job and did no more physical work. He became a candidate for County Commissioner. Being "pretty sure" of being elected in November, in July, 1954, he orally gave his son, John, his, Aubrey's, interest in the partnership on the condition that John run it. He, Aubrey, was not to be a partner in the profits. At that time John owed him $6,865.00. John was to repay him that sum "as he could, as he got the money". At the time of the hearing on June 12, 1956, John had re-

paid him $4,500.00, leaving a balance due of $2,365.00, which John still owed him. The Department of Geology, Mine and Water Resources had been issuing licenses for drilling since July 1, 1945. He renewed his drilling license up until July 1, 1955. At that time, inquiry having been made as to why he did not buy his license, he notified the Department that he had been elected County Commissioner and was no longer engaged in the drilling business. He had no interest in the drilling contract of March 23, 1955, with Garrett County at the quarry. He had no consultation with his son as to what price should be charged the Roads Department for drilling. John set that price himself. As to testimony previously given by other witnesses that he, Aubrey, since the summer of 1954 had gone to their homes and talked with them about wells, he admitted that this was true and that other people had also consulted him. He was doing this every day. People would call or write him about having wells drilled. Sometimes he told them that he would tell his son about it. At other times, when his son was not available, he would go out and "spot the well" for them, tell his son about it, and his son would do the work later. He did this as an accommodation to his son. On cross-examination he testified that before June, 1954, he operated his business as A. C. Brenneman and Son. Before 1948, he operated as A. C. Brenneman, or Aubrey C. Brenneman. After 1948, the partnership was merely by a verbal agreement, "a fifty-fifty proposition". He had the equipment at that time and John had no money. In 1950 they bought some well drilling equipment. He paid $5,000.00 on it and John paid $2,500.00. No assessment of the well equipment was made to John in 1954, 1955, or 1956. However, he said that John owned half of the equipment during those years. He, Aubrey, had no interest, either directly or indirectly in the business, since July or August, 1954. He did not give any notice to creditors or other persons about his severing his relationship as a partner. His son has continued the business under the name of A. C. Brenneman and Son, as a trade name. He admitted that in May, 1955, he applied for a Traders License in the name of Aubrey Brenneman and John J. Brenneman, trading as A. C. Brenneman

and Son. He saw no use in changing the name on the Traders License. He was no longer interested in the business. When asked if he still owned the business, he replied: "Well, it's on the assessment books." When asked whether he was the owner, he replied: "Well, I wouldn't say I was full owner. It is Aubrey C. Brenneman and others." When asked whether he paid the taxes, he replied that he paid these personally in February, 1955, and John paid them in 1956 out of the A. C. Brenneman and Son bank account. He admitted that since 1954 he had taken orders for A. C. Brenneman and Son. The money he loaned John had been drawn out of his, Aubrey's, savings account and had been placed in the A. C. Brenneman and Son bank account. This is a joint account and he thought he still had authority to draw checks on that account. He also admitted that at times he would tell persons that his son would drill wells for them and what the charge would be. He admitted that he joined in the partnership income tax report in 1956, but that he gets no profit from the partnership. When asked by the chancellor if during 1955 his son had gone to the bank and borrowed $10,000.00 and had signed the note "A. C. Brenneman and Son per John J. Brenneman" would he, Aubrey, consider himself liable on that note, he replied: "Yes, sir, I would have."

John J. Brenneman, testifying for the respondent, said that the partnership with his father was formed in January, 1948. His father stopped work in June, 1954, and he carried on the business. The partnership was dissolved in July, 1954. When his father took him in the business no papers were drawn. The agreement was verbal. He was to help his father. He would do half the work and his father would do half and they would split the profits equally. In the summer of 1954, his father's health was such that he could not work. In June, 1954, he stopped and the partnership was dissolved and from that time he, John, received all the profits. The contract for the drilling with Garrett County was made by him in his name and his father had no interest in it. Since the partnership was dissolved his father had taken work orders for him and helped him get contracts. On cross ex-

amination he said that he then operated as A. C. Brenneman and Son. There had been no change as far as the public was concerned after the partnership was dissolved. He, John, made the drilling contract with Mr. DeWitt, the road engineer. He supposed it was approved by the Commissioners. Two months after that contract was made the Traders License was taken out as Aubrey C. Brenneman and John J. Brenneman, trading as A. C. Brenneman and Son. His father has not owned the business since the summer of 1954. The reason he is not assessed with the property is because he has not fully paid his father for it. His father has the title to part of the equipment but he is paying him for it. His father gets no profits. The equipment was to become his when he paid his father for it. The reason the bank account was in the name of A. C. Brenneman and Son was just because it had not been changed. His father has no interest in that account. Although a partnership income tax return was filed, he gets all the profits. At the time the partnership was formed the value of the equipment was between five and six thousand dollars. At the time the partnership was dissolved he owed his father $2,665.00. Since the dissolution his father had loaned him $4,000.00 to buy a rotary drill. This amount was withdrawn from his father's personal account. His father paid the taxes in 1955 for which he had reimbursed him. He, John, paid the 1956 taxes.

The appellant contends that the appellee, Roth, filed the amended bill of complaint to get even with him for objecting to the payments by the Commissioners to Roth for delivering surplus food. The allegation of want of good faith and the motives of Roth as a taxpayer are immaterial. *Packard v. Hayes,* 94 Md. 233, 252, 51 A. 32.

In the case of *Jones v. State,* 207 Md. 481, 115 A. 2d 273, Mr. Jones, the appellant, was a member of the Off-Street Parking Commission of Baltimore City, the duties of which were to administer and supervise the expenditure of money to provide places for storing, parking, and servicing self propelled vehicles. He was convicted on the second count of an indictment charging him with the violation of a Baltimore City Ordinance which provided in part that: "It shall not

be lawful for any officer of this corporation, * * * to be engaged or concerned, directly or indirectly, in any contract for work done or to be done on account of the city, or in which the city is or may be in any way concerned * * *." The appellant had been engaged for many years in the general practice of law in Baltimore. While a member of the Off-Street Parking Commission he was employed as counsel for Charles Street Garages, Inc., which had made application to that Commission for a loan to construct an off-street parking garage. The application was approved by that Commission at the time Mr. Jones was a member and the loan was made at that time. That Commission also made an exception from the usual procedure in favor of Charles Street Garages, Inc. Mr. Jones was to receive a fee of $6,000.00 for the incorporation of Charles Street Garages and other affiliated corporations, for estate planning, and personal advice as to the tax situation. This fee was to be paid at the rate of $2,000.00 per year for a period of three years. Appellant also received for other services approximately $450.00. All of these fees were paid during the period that Mr. Jones was a member of the Commission. Progress payments were paid to Charles Street Garages, Inc., by the City while Mr. Jones was a member of the Commission. This Court there held that the more contracts that these corporations, represented by Mr. Jones, received, the greater need there would be for legal services, and the more likelihood there would be that they would be in a position to pay Mr. Jones the fees they had contracted to pay him. Therefore, Mr. Jones had a pecuniary interest in the contracts awarded his clients while he was on the Commission and he was directly or indirectly concerned in those contracts in violation of the ordinance. A number of cases were there reviewed to sustain that holding. Among others was the case of *People v. Deysher,* 2 Cal. 2d 141, 40 P. 2d 259, where Deysher, a supervisor of county roads, was a partner in a partnership which had rented road machinery to the county. It was held that Deysher had violated a statute similar to the one here. In *Beakley v. City of Bremerton,* 5 Wash. 2d 670, 105 P. 2d 40, the city attorney employed his wife to do stenographic work to be paid for by the city. The

husband had an interest in her wages. It was held that he was interested directly or indirectly in his wife's contract with the city, in violation of a statute similar to the one here. As was said in *Lennox & Matthews & Associates v. Rozzelle* (Ind. App.), 104 N. E. 2d 409, 411, in reference to a statute similar to the one here: "Nor is it necessary to show that any evil was in fact done by or through the contract. The purpose of the rule is to prevent persons from assuming a position where selfish motives may impel them to sacrifice the public good to private benefit."

From the evidence the chancellor was justified in finding, as he did, that after the drilling contract was made by the Commissioners with John, Aubrey took out and paid for the Traders License in the name of "Aubrey C. Brenneman and John J. Brenneman, trading as A. C. Brenneman and Son". Aubrey reported to the assessor, under penalty of perjury, in 1954 and 1956 that the drilling equipment was owned by A. C. Brenneman and others and Aubrey paid the 1955 taxes. The bank account was in the name of A. C. Brenneman and Son and either could draw checks on that account. Each also had his own personal account. After the contract was made with the Commissioners, Aubrey took orders for his son for well drilling, gave estimates on prices, and selected sites for the wells. A partnership return was filed for 1955, although both John and Aubrey testified that the return showed that John was entitled to all the profits. Aubrey admitted that he would consider himself liable on a note signed by John with the name of A. C. Brenneman and Son. Also, no public notice was ever given as to the dissolution of the partnership.

It is also evident that in July, 1954, John owed Aubrey $6,865.00 which John was to repay as he could. In March, 1955, John made the contract with the Commissioners, of which body Aubrey was a member. Since the dissolution of the partnership Aubrey had loaned John $4,000.00 to buy a rotary drill. At the time of the hearing before the chancellor on June 12, 1956, John still owed Aubrey a balance of $2,365.00. As in the case of *Jones v. State, supra,* the more money John made out of his work with the Commissioners,

the more likelihood there would be that Aubrey would be repaid what John owed him. Even if a partnership did not exist, although the chancellor found that it did at the time the contract was made, and although Aubrey may not in fact have acted otherwise than in an unbiased manner, yet the chancellor was correct in finding that Aubrey Brenneman directly or indirectly participated in the benefits of an agreement with the Commissioners and in the work done by John J. Brenneman for the Commissioners, and in passing paragraph 2 of the decree. Paragraph 1 of the decree is not before us. Paragraphs 3 and 4 are reversed. Paragraph 2 is affirmed.

An injunction to restrain County Commissioners from acting unauthorizedly or illegally to the detriment of the party complaining is authorized in Maryland. *Webster, et al. v. County Commissioners of Baltimore County,* 51 Md. 395; *Anne Arundel County v. Thomas,* 172 Md. 18, 190 A. 681. Compare *Baltimore City v. Fairfield Improvement Co.,* 87 Md. 352, 39 A. 1081.

We are not in anyway passing upon any amount claimed to be due John J. Brenneman or A. C. Brenneman and Son by the Commissioners or the Road Board. This will have to be determined by future proceedings and nothing in this opinion or in the opinion of the chancellor is to be construed as in anyway passing upon the merits of any such claim.

> *Decree affirmed in part and reversed in part, and cause remanded for the passage of a decree to conform with this opinion. Costs of this appeal to be paid by the appellant.*