## HELEN T. BORNE *v.* LEWIS E. BORNE, JR.

[No. 98, September Term, 1976.]

*Decided November 8, 1976.*

The cause was argued before THOMPSON, POWERS and MELVIN, JJ.

*John P. Corderman* for appellant.

*David K. Poole, Jr.* and *R. Martin Palmer, Jr.* for appellee.

POWERS, J., delivered the opinion of the Court.

By an amended decree signed by Judge Paul Ottinger, the Circuit Court for Washington County granted to Lewis E. Borne, Jr., an absolute divorce from Helen T. Borne, dismissed Mrs. Borne's cross-bill, and denied her petition to reserve the right to award alimony later.

In her appeal from that decree Mrs. Borne argues that the factual findings of the trial judge concerning the appellant's disposition to commit adultery were clearly erroneous, and that the evidence in the record does not meet the irreducible minimum standard of proof necessary to substantiate a claim of adultery.

This litigation began on 21 January 1974 when Mr. Borne filed a bill of complaint alleging that the parties were residents of Washington County, that they were married in 1949, that their two children were emancipated, and that Mrs. Borne had committed adultery. He prayed for an absolute divorce. Mrs. Borne answered, and denied the allegation of adultery. Mrs. Borne filed a "Cross-Bill of Complaint" in which she alleged that her husband deserted and abandoned her on 4 January 1972, and prayed that she be granted an absolute divorce, and reasonable counsel fees. The husband's answer to the cross-bill denied its essential allegations.

With leave of court Mr. Borne filed a supplemental complaint on 7 January 1975, alleging that the parties had

lived separate and apart consecutively, without co-
habitation, for a period of three years. He again prayed for
an absolute divorce. The wife answered, admitting the
allegations of the supplemental complaint, and requesting
the court to reserve jurisdiction over alimony in any decree
passed.

Evidence on all issues was taken before the chancellor on
25 November 1975. In a Memorandum Opinion filed with the
decree the chancellor stated that Mr. Borne did in fact move
out of the marital home on 4 January 1972, and that the
parties had not cohabited since that time. The opinion then
said:

> "There was a great deal of convincing testimony
> offered that, beginning in September of 1973, a man
> named Glenn Bitner began to visit Mrs. Borne at
> her home at 328 Nottingham Road regularly,
> usually in the evening, and frequently remained
> until midnight or thereafter. This is not disputed;
> in fact, it was admitted by both Mrs. Borne and the
> alleged paramour Bitner. This testimony, of course,
> establishes the opportunity to commit adultery.
> Mrs. Borne's attorney argues, however, that there
> was no evidence of inclination. The Court disagrees.
> Mr. Borne and at least one of his witnesses testified
> that on some of the occasions when Mrs. Borne
> came to the front door to turn the light on for
> Bitner when he was leaving, that she (the
> Defendant) kissed Bitner and the Court believes
> this testimony and finds therefore that there was
> both opportunity and inclination. The Court finds
> further that Mrs. Borne was guilty of adultery with
> Bitner, after the separation, and that such adultery
> has not been condoned by Mr. Borne, nor has there
> been any reconciliation between the parties since
> this adultery was committed. Mr. Borne is
> therefore entitled to a Divorce A Vinculo
> Matrimonii on the ground of adultery and, of
> course, he is also so entitled on the other ground of

three years continuous separation without cohabitation.

"The Court will award Mr. Borne a Divorce A Vinculo Matrimonii. The Cross-Bill of Mrs. Borne will be dismissed and the request to reserve the right to award alimony at a later date will be denied."

Preliminarily we note that the decree itself grants the divorce, but does not state a ground. It is often said that, "The opinion does not constitute a part of the decree, and the appeal, of course, is only from the decree." *Brenneman v. Roth*, 212 Md. 491, 497, 130 A. 2d 301 (1957); *Holmes v. Sharretts*, 228 Md. 358, 374, 180 A. 2d 302 (1962). The Court of Appeals has also said, however, that, "Although an appeal is from the action of the court, not from the opinion, the opinion may be looked to for the establishing of matters therein set forth." *Scherr v. Braun*, 211 Md. 553, 560-61, 128 A. 2d 388 (1957).

Looking to the opinion to establish the chancellor's reasons for the decree, we consider it evident that the culpatory ground of adultery was one ground for the divorce, whether or not non-culpatory separation for three years was also a ground. Indications in the decree that the court found Mrs. Borne to be a wrongdoer were dismissal of her cross-bill,[1] and denial of her request to reserve the question of alimony.

We have carefully reviewed the evidence upon which the chancellor based his finding of adultery. In the absence of direct proof, of which, as in most such cases, there was none,

---

[1] The chancellor noted that the undisputed facts showed that Mr. Borne left the home. There appears to have been no contention or evidence that the desertion was constructively attributable to the wife. She would have been entitled to a divorce on the ground of desertion, Binder v. Binder, 16 Md. App. 404, 408, 297 A. 2d 293 (1972), unless barred by the doctrine of recrimination. Proof of adultery by her would constitute recrimination. But culpatory grounds for absolute divorce are of equal magnitude before the law, and Maryland does not recognize the doctrine of comparative rectitude, Courson v. Courson, 208 Md. 171, 177-78, 117 A. 2d 850 (1955); Matakieff v. Matakieff, 246 Md. 23, 35, 226 A. 2d 887 (1967); and Blumenthal v. Blumenthal, 258 Md. 534, 540, 266 A. 2d 337 (1970). Mr. Borne's desertion of his wife would therefore constitute an effective recriminatory defense against his allegation of adultery.

adultery can be found only by inference. The process of drawing inferences is usually approached by the courts on a two step basis. One step requires that there be evidence to prove that the spouse and the companion were together at a time and place and under circumstances which provided them an opportunity to engage in sexual intercourse, should they be so disposed.

As the chancellor noted in his opinion, there was a great deal of testimony that established that Mrs. Borne and Mr. Bitner, the alleged paramour, on several occasions had the opportunity to commit adultery. It is true that an opportunity must be shown to have existed before a court can be asked to find, by inference, that the man and woman who had the opportunity did in fact commit adultery. The showing of a *mere* opportunity, although a prerequisite to circumstantial proof of adultery, has little or no evidentiary significance in itself. Countless opportunities, in the sense of an occasion when a man and a woman are present temporarily at a place where no one else is present, occur every day. Ordinarily, such an opportunity means nothing. We must assume respectability and virtue, unless there is evidence to show otherwise.

The other step in the inferential process requires evidence that both the man and the woman in question have an adulterous disposition — that it is the inclination of each one to commit adultery when there is an opportunity to do so. *Steinla v. Steinla*, 178 Md. 367, 13 A. 2d 534 (1940).

The finding in this case that both Mrs. Borne and Mr. Bitner had the inclination or disposition to commit adultery, and the inference that they did in fact do so, was based entirely upon evidence which the chancellor summarized in these words:

> "Mr. Borne and at least one of his witnesses testified that on some of the occasions when Mrs. Borne came to the front door to turn the light on for Bitner when he was leaving, that she (the Defendant) kissed Bitner and the Court believes this testimony and finds therefore that there was

both opportunity and inclination. The Court finds further that Mrs. Borne was guilty of adultery with Bitner * * *."

An error in recollection of the testimony may have contributed to the chancellor's finding of inclination. Review of the record shows that it was not "some of the occasions", but on only one occasion that there was evidence of a kiss, when Mrs. Borne turned on the porch light for Mr. Bitner when he was leaving. No witness said that "she kissed Bitner." Chester A. Herbert, who was watching with Mr. Borne, said, "I saw them kiss goodnight." Mr. Borne, whom we would expect to be acutely observant of details, said, " * * * he kissed her goodnight and left * * *."

While one goodnight kiss is the most damning evidence against Mrs. Borne, we have reviewed all of the testimony which bears on her relationship with Mr. Bitner. In substance, the testimony showed that in September, possibly August, 1973, more than 18 months after Mr. Borne left the home, a Mr. Glen Bitner began to call upon Mrs. Borne. Mr. Bitner, a widower since 1968, was employed as a pharmacist at the Western Maryland Center, a State Hospital where Mrs. Borne was employed as a registered nurse. They had known each other for several years.

Mr. Borne, sometimes alone, sometimes with one or another of several friends, observed the house on numerous occasions from September 1973 to January 1974, when he filed suit. The combined testimony of Mr. Borne, Chester A. Herbert, Roy Trovinger, Eileen Herbert (his sister), and Edward J. Weneck, as well as the testimony given by Mrs. Borne, Mr. Bitner, and Madeline Light, a next door neighbor called as a witness by Mrs. Borne, produced not a single conflict of fact. The testimony described some half dozen occasions (and the alleged wrongdoers freely confirmed that there were more) when Mr. Bitner came by car to Mrs. Borne's house, parked in a conspicuous place, entered the house, and later left. The hours of these visits were generally from around 9:00 P.M. to a little before or a little after midnight. Once or twice he arrived around dinner time, and

stayed only an hour or so. They attended together a Western Maryland Center Christmas party. On a few occasions they had a meal together at the clubhouse of the Potomac Fish and Game Club. When Mrs. Borne went on a trip to visit relatives, Mr. Bitner took her and her luggage to the airport. Both Mrs. Borne and Mr. Bitner testified that their relationship was one of friendship or companionship. Each said that they had not engaged in sexual relations.

There was no suggestion in the evidence of secretiveness or of any effort to conceal their activities. There was no suggestion, by evidence of lights being turned on or off, or otherwise, of movement of the occupants into areas of the house less appropriate to an innocent social visit. The one occasion upon which Mr. Borne said Mr. Bitner kissed her goodnight and left, was not described as involving any undue familiarity, any indiscretion, or any disregard of propriety. The witnesses gave it no sexual connotation.

In short, we hold that the chancellor's finding that Mrs. Borne displayed a disposition to commit adultery, and his finding by inference that she did commit adultery, were not justified by the evidence, and were clearly erroneous.

In *Steinla v. Steinla,* 178 Md. 367, 13 A. 2d 534 (1940), the Court of Appeals, citing many cases, said of adultery, at 373-74:

> "Because of the secret and clandestine nature of the offence, it is rarely shown by direct proof, but must of necessity in most cases be proved by circumstantial evidence. Because of the stigma which the finding carries, and the possibilities of error inherent in proof of that nature, the general rule is that the quality of evidence required to establish it must be high, and its quantum sufficient to satisfy a reasonable mind of the truth of the charge. It need not be proved beyond a reasonable doubt, except where it is the subject of a criminal prosecution, nevertheless, to justify such a finding, the evidence must be such as to exclude any reasonable possibility of innocence. [Citations

omitted.] It must go beyond proof of facts merely justifying suspicion, and show facts inconsistent with innocence. [Citations omitted.]"

Again in *Dougherty v. Dougherty*, 187 Md. 21, 48 A. 2d 451 (1946), the Court of Appeals said, at 27-28:

"It is an established rule that the burden of proof in a suit for divorce is upon the complainant, and where adultery is charged the evidence must establish affirmatively that the alleged offense was committed. It is not necessary, however, to establish the charge of adultery by direct evidence of the commission of the act, for because of the clandestine nature of the offense it is rarely possible to obtain evidence of the commission of the act by the testimony of eyewitnesses. The offense may be inferred from the circumstances if the inference is the only natural and logical deduction to be drawn therefrom. To prove adultery, the circumstantial evidence must clearly establish (1) a disposition on the part of the defendant and the paramour to commit adultery, and (2) an opportunity to commit the offense. After considering these and all other facts and circumstances in the case, the court then determines whether the evidence would convince an unprejudiced and cautious person of the guilt of the defendant. The permanent consequences of adultery are so injurious to the parties that the court will not accept as sufficient proof of its commission anything less than evidence so clear, satisfactory and convincing as to raise in the mind of a reasonable and unprejudiced person a natural inference of guilt. We do not consider the use of circumstantial evidence harsh or unreasonable, for it applies only to those who, by open disregard of the moral and social conventions and decencies of life, have shown themselves indifferent both to

their marital obligations and to the opinion of others. [Citations omitted.]"

And mere association is not eough, as the Court of Appeals explained in *Hockman v. Hockman,* 187 Md. 340, 50 A. 2d 136 (1946), when it said, at 344:

> "The law is clear that the charge of adultery in a suit for divorce may be established without direct evidence of the commission of the act. It is rarely possible to obtain evidence of its commission by the testimony of eyewitnesses. In considering circumstantial evidence, however, the chancellor should exercise care and circumspection and should not hold that the offense has been committed except upon evidence so clear and satisfactory that it would convince a reasonable and unprejudiced man of the guilt of the accused. *Sterling v. Sterling,* 177 Md. 683, 9 A. 2d 214; *Renner v. Renner,* 177 Md. 689, 12 A. 2d 195, 127 A.L.R. 674. The circumstantial evidence required to prove the charge of adultery must show (1) a disposition of the defendant to commit it, and (2) an opportunity to commit it. The mere association of a man and a woman, however frequent and extended it may be, is not of itself sufficient to prove the charge of adultery. As we said in *Renner v. Renner,* 177 Md. 689, 12 A. 2d 195, 127 A.L.R. 674, a man and a woman may be brought together daily for the transaction of business, or may live in the same house, or may be seen frequently in each other's company, but the offense is not proved by any such circumstances unless there is some evidence of conduct or speech indicating an adulterous disposition."

The Court said in *Smith v. Smith,* 225 Md. 282, 170 A. 2d 195 (1961), at 286:

> "Something more than mere suspicion or indiscretion is necessary to overcome the

presumption of innocence. [Citations omitted.] The circumstances must be such as to lead a reasonable and just man to the conclusion of misconduct, although adverse inferences may be drawn from evidence of disposition and opportunity."

Particularly applicable to the facts in the case before us is what Judge Oppenheimer said for the Court of Appeals in *Laccetti v. Laccetti*, 245 Md. 97, 225 A. 2d 266 (1967), at 103-04:

"The rule that to support a finding of adultery there must be evidence of disposition as well as of opportunity is not based on legal naivete. Rather, it is an acknowledgment of judicial limitations. Absent the searchlight of evidentiary facts, the law recognizes the infinite variations in personalities whose interplay is unpredictable. Even within the framework of constant physical proximity, without some evidence of inclination, the relationship of a man and woman can only be a matter of speculation; in the range of those relationships, even innocence is possible."

For similar expressions of the general rule see *Patzschke v. Patzschke*, 249 Md. 53, 238 A. 2d 119 (1968); *Matakieff v. Matakieff*, 246 Md. 23, 226 A. 2d 887 (1967); *Riley v. Riley*, 239 Md. 363, 211 A. 2d 748 (1965); *Abare v. Abare*, 221 Md. 445, 157 A. 2d 427 (1960); and *Pekar v. Pekar*, 188 Md. 360, 52 A. 2d 468 (1947).

Among the numerous other cases in which the rule has been applied to determine whether the evidence showed a disposition to commit adultery are *Pontorno v. Pontorno*, 257 Md. 576, 263 A. 2d 820 (1970); *Breault v. Breault*, 250 Md. 173, 242 A. 2d 116 (1968); *Blankenship v. Blankenship*, 239 Md. 498, 212 A. 2d 294 (1965); *Oliver v. Oliver*, 217 Md. 222, 140 A. 2d 908 (1958); *Lickle v. Lickle*, 188 Md. 403, 52 A. 2d 910 (1947); *Stevens v. Stevens*, 186 Md. 612, 47 A. 2d 752 (1946); *Schriver v. Schriver*, 185 Md. 227, 44 A. 2d 479 (1945); *Gosman v. Gosman*, 19 Md. App. 66, 309 A. 2d 34 (1973);

*Deckman v. Deckman,* 15 Md. App. 553, 292 A. 2d 112 (1972); and *Barnes v. Barnes,* 14 Md. App. 638, 287 A. 2d 808 (1972).

We have said that the finding of adultery was clearly erroneous. If the decree simply granted a divorce to Mr. Borne on that ground, it would have to be reversed. As we noted earlier, however, the decree did not specify a ground. The chancellor's opinion stated that Mr. Borne was entitled to a divorce on both grounds. When only one ground is alleged in a complaint, and a divorce is granted, it is unnecessary for the decree to state the ground. When more than one ground is alleged, however, it is desirable that the decree specify the ground upon which the divorce is granted. This is especially true for obvious reasons when one ground is culpatory and one is non-culpatory.

We reverse the decree insofar as it grants a divorce on the ground of adultery, and we affirm the decree insofar as it grants a divorce on the ground that the parties have lived separate and apart without any cohabitation and without interruption for three years. We vacate that part of the decree which denies the petition of the wife to reserve the right to award alimony later. That part of the decree which dismisses the wife's cross-bill was not questioned in this appeal, and must stand. That dismissal does not, however, constitute a finding of fault on her part.

On remand the chancellor shall reconsider, in the light of what we have said in this opinion, the request to reserve alimony. See *Flanagan v. Flanagan,* 270 Md. 335, 311 A. 2d 407 (1973). He shall then enter an amended decree in conformity with this opinion, and with such provision regarding alimony as he shall then deem appropriate.

> *Decree affirmed in part and reversed in part.*
> *Case remanded for further proceedings in accordance with this opinion.*
> *Appellee to pay costs.*