[Crim. No. 4732.    Third Dist.    Sept. 11, 1968.]

THE PEOPLE, Plaintiff and Respondent, v. NINA MAY BUCKMASTER BAMMES, Defendant and Appellant.

Coshow & Barr, William W. Coshow and John D. Barr for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Edsel W. Haws and Daniel J. Kremer, Deputy Attorneys General, for Plaintiff and Respondent.

BRAY, J.*—Appeal from judgment of conviction after jury trial of violation of section 20001 of the Vehicle Code (failure by a driver of a vehicle involved in an accident to stop).

*Questions Presented:*

1. Defendant knew that she was involved in an accident.

2. Section 20001 of the Vehicle Code does not violate a defendant's privilege against self-incrimination.

3. Statute is not unconstitutionally vague.

*Record.*

Defendant was charged in an information with five counts of vehicular manslaughter (Pen. Code, § 192, subd. 3 (a))

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

and with one count of violation of section 20001 (failure to stop after accident). Her motions for dismissal of the information and also for dismissal of the count charging violation of section 20001 were denied. The jury found defendant not guilty of the vehicular manslaughter counts but guilty of violation of section 20001. Her motion to set aside the conviction was denied. The trial court sentenced defendant to the county jail for 30 days and then suspended the sentence for 30 days.

*Evidence.*

The accident upon which this prosecution is based occurred at or near the intersection of State Highway 299, running east and west through Shasta County, and Rock Creek Road where it joins State Highway 299 from the north, forming the intersection. At this point State Highway 299 is straight for some distance on either side of the intersection, curving to the north 2,050 feet west of the intersection and gradually to the southeast before the intersection. Although there is conflict in the evidence as to the visibility up and down State Highway 299 of a person stopped at the limit line of Rock Creek Road, there was evidence that from that point visibility to the east is approximately 960 feet. At the time of the accident visibility to the west from a car stopped behind the limit line at a point at which a highway patrolman felt that anyone would stop to look up the road was approximately 2,000 feet. In any event a person on entering the highway from Rock Creek Road would have an unobstructed view for a considerable distance of the highway in both directions.

About 2:15 p.m. Eugene Jungwirth was approaching the intersection from the east on State Highway 299. He was driving an unloaded 23,000 pound Peterbilt logging truck. At the same time the Rollins family station wagon approached the intersection from the west on State Highway 299. Defendant in her Cadillac, followed by her friend Dorothy Shelton in a Chevelle, was approaching the intersection from the north on Rock Creek Road.

Jungwirth approaching at a speed of 45 miles per hour and seeing defendant's Cadillac approaching the Rock Creek Road limit line started to decelerate. However, on seeing defendant pull to a stop a few feet behind the limit line, Jungwirth resumed speed. He then saw the Rollins vehicle coming from the west.

When the Rollins station wagon was what Jungwirth estimated to be 300 feet west of the intersection, defendant turned left into State Highway 299's eastbound lane into the

path of the station wagon. The nose of the station wagon dipped, indicating braking; the Rollins vehicle then swerved to its left into the path of the oncoming logging truck to avoid hitting defendant's car. Thereupon, Jungwirth applied maximum braking power, leaving 69 feet of dual wheel skid marks in the westbound lane. The resulting collision between the logging truck and the Rollins vehicle demolished the station wagon and killed five of its occupants. Debris was showered over 150 feet of roadway and defendant's car, which was to the left rear of the truck at the moment of the truck's impact with the station wagon, was struck by a piece of flying debris, breaking the windwing.

When Jungwirth saw defendant's car coming into the intersection, he ''figured there was something going to happen, somebody was either going to go in the ditch or there was going to be a collision because the approaching car, the Rollins vehicle swerved into [his] lane to avoid hitting the Cadillac in the rear end.'' He further testified that had the station wagon not taken the ''evasive action'' it did, it would have hit defendant's car in a rear end collision.

Defendant testified that coming to the intersection she stopped about at the stop sign. She saw and heard the truck approaching. Not being able to see very well because of brush she ''rolled forward.'' She saw no traffic to her right. She did not stop in the intersection because of the approaching truck. When she could see 100 feet down the road, she pressed on the accelerator and started her turning motion.

Defendant saw the station wagon when the nose of her car reached the center line of State Highway 299 in the course of her left-hand turn. She noted that it was closing in on her but felt that the station wagon had plenty of time to come in behind her without braking. As she completed her turn she heard the screech of the truck's brakes. Through her rearview mirror she saw the station wagon fishtail and observed the actual impact. Her car had already passed the truck and was to its rear at the time of the collision. The station wagon was about two car-lengths behind her when the collision occurred. While she stated that she did not see the station wagon start to pass her, she admitted that she saw it in the wrong or west bound lane and that it was apparent it had pulled out to pass her. She knew that the reason the station wagon was involved in the collision with the truck was because the station wagon was passing her.

Immediately following the impact Jungwirth ran towards

the station wagon. Mrs. Shelton, who had been following defendant and who had stopped at the Rock Creek Road limit line, ran toward the scene to try to help the injured. Thinking the smashed station wagon was defendant's car, Mrs. Shelton stated that there was a woman in there whom she knew.

A few minutes after the crash Jungwirth saw defendant's Cadillac come back toward the accident scene from the east. She approached to within 300-400 feet of the wreck and then turned east. A Mrs. Peterson, who had stopped at the scene, gave chase and obtained defendant's car's license number. Following the accident Mrs. Shelton proceeded to the county hospital where she and defendant had arranged to meet. Defendant did not appear.

Following the collision defendant returned to her home telling her husband of the accident. She told him, "I had no way of knowing whether I was involved or not, but that I thought we ought to talk to the insurance man." Shortly, her husband contacted both an insurance agent and an attorney. That same day defendant, her husband, the insurance agent and the attorney visited the scene of the accident.

Defendant testified that following the accident she was shaken; she turned to go back to the scene, saw that a car had already stopped there and feeling that she was in no condition to aid the injured, she turned around and drove away. She was so upset that after driving a short distance she had to stop and spend about 30 minutes getting herself back under control. She knew her acquaintance was at the scene of the accident and would know how to get in touch with her if she were needed. After delivering some flowers to a friend's house she returned home. She concluded that her vehicle did not collide with either of the other vehicles or force the Rollins vehicle off the road or require it to take evasive action to avoid the collision. The only physical connection between her car and the accident was a piece of debris which struck and broke the windwing. Her conclusion that evasive action by the Rollins vehicle was unnecessary is negated by her own testimony and that of other witnesses.

Defendant presented expert testimony to the effect that the driver of the station wagon had ample time to brake and avoid a collision after defendant pulled into the eastbound lane.

1. *Knowledge of the Accident.*

Section 20001 of the Vehicle Code provides in pertinent part: "The driver of any vehicle involved in an accident re-

sulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of sections 20003 and 20004.

''Any person failing to comply with all the requirements of this section under such circumstances is guilty of a public offense. . . .'' (§§ 20003 and 20004 provide certain duties of the driver in the event of an injury or death.)

■ Defendant concedes that there need not necessarily be some contact between defendant's vehicle and that of another for a defendant to be ''involved in an accident'' under section 20001, but contends that her actions in nowise caused or contributed to the accident in this case, and further, that if they did she was unaware of that fact.

Her claim that she did not contribute to the accident is based upon her testimony and that of her expert. However, under the other evidence, and particularly Jungwirth's testimony, it is clear that her action in turning into the intersection in front of the oncoming station wagon was an efficient cause of the latter's colliding with the truck and that therefore defendant was ''involved'' in the accident.

In *People* v. *Sell* (1950) 96 Cal.App.2d 521, 523 [215 P.2d 771], the court in interpreting section 480 of the then Vehicle Code, the predecessor of section 20001, which contained the identical pertinent language now found in the latter section, stated ''It seems clear that the word 'involved' is there used in the sense of being connected with (an accident) in a natural or logical manner. The statute relates to a driver thus involved in such accident and is in no way made dependent upon whether or not control of a vehicle is retained or lost, or upon who may ultimately be found to be most at fault.''

Assuming, as defendant contends, that the real *cause* of the accident could have been the actions of the driver of the station wagon in perhaps failing to see defendant pull out into his lane until it was too late, or in electing to attempt to pass rather than to brake sharply so as to pull in behind defendant's car, nevertheless defendant was *involved* in the accident because it was her pulling out into the intersection in front of the oncoming station wagon which precipitated the necessity for some immediate action upon the part of its driver.

■ One can be involved under section 20001 in an accident without being its legal cause. A good example of this is where in an impending accident the other person has a last clear chance to prevent it.

As said in *People* v. *Sell, supra,* at page 524, "Whether or not the defendant was entirely responsible for this accident his vehicle was involved therein, within the meaning of the statute." There the driver of a car sideswiped a car driven by one Deines, causing the latter car to swerve to the left and into the path of an oncoming car. The driver of the first car contended that he was not "involved" in the collision between the Deines car and the oncoming car. The result in the *Sells* case would have been the same had the sideswiping car merely swerved without striking the other car but still forcing it into the oncoming traffic.

*People* v. *Kinney* (1938) 28 Cal.App.2d 232 [82 P.2d 203], involved a prosecution under Vehicle Code section 482, subdivision (a), the predecessor of section 20003 of the Vehicle Code, which required "The driver of any vehicle *involved* in an accident resulting in injury to or death . . ." to perform certain acts there set forth, including assistance to the injured person. (Italics added.) The defendant had lost control of his car causing it to overturn and seriously injure his guest passenger. The defendant did not comply in any respect with the section. The defendant contended that "the statute does not require the driver of an automobile who is involved in a casualty *other than a collision* or the striking of a pedestrian to render assistance. . . ." (Italics added.) The reviewing court refused to accept this interpretation of the statute, stating that the statute applied to the driver of any vehicle involved in an accident "of any sort." The court further stated that the language of the statute "does not limit the performance of such acts to the drivers of automobiles which strike and injure a pedestrian, or which are involved in a collision with other vehicles. It includes all machines which are involved in accidents of any nature whatever in which another individual is injured or killed." (P. 238.)

The duties imposed by the Vehicle Code section we are considering are imposed upon the driver whether or not he is responsible for the accident. (See *Brooks* v. *E. J. Willig Truck Transp. Co.* (1953) 40 Cal.2d 669, 679 [255 P.2d 802].)

As stated, defendant concedes that to be "involved" in an accident does not necessarily require a collision between her car and another. The correctness of this conclusion is shown by the history of section 20001.

In 1923 its predecessor section 480 of the Vehicle Code provided "The driver of any vehicle which *strikes* any person or *collides* with any other vehicle shall immediately stop. . . ."

(Italics added.) In 1929 the section was amended by striking out "which strikes . . . or collides . . ." and inserting the language now in the present section "involved in an accident."

There was ample evidence to support the jury's implied finding that defendant was "involved" in the accident. The fact that the jury also found defendant not guilty on the manslaughter charges is not inconsistent with their finding that she was "involved." As stated, section 20001 is not concerned with the legal liability for the *cause* of the accident but with involvement rather than liability.

This brings us to the question as to whether defendant knew that she was involved. In determining this issue we bear in mind that "it is the function of the jury in the first instance, and of the trial court after verdict, to determine what facts are established by the evidence, and before the verdict of the jury, which has been approved by the trial court, can be set aside on appeal . . . it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below." (*People* v. *Tom Woo* (1919) 181 Cal. 315, 326 [184 P. 389].

There is ample evidence to justify the jury's implied finding that defendant knew she was involved. The accident occurred with a force sufficient to kill five people, demolish a station wagon, and seriously damage a 23,000 pound logging truck. At the moment of impact defendant's car was to the left rear of the logging truck, possibly no more than two car-lengths away, close enough to have a windwing broken by a piece of flying debris. Assuming normal perception on defendant's part, as the jury was entitled to do, the suddenness of the accident after she turned into the lane of the station wagon she saw approaching, the very violence of the collision coupled with her proximity to the point of impact, and the striking of her car by debris from the collision, would have notified her that she had been involved in the accident. On returning toward the scene and observing the relative positions of the wrecked vehicles, she must necessarily have become aware that the accident happened when the car behind her had tried to pass immediately after she turned into the highway and that the attempt to pass was an attempt to avoid hitting her. Moreover, she testified that before turning onto the highway she saw the oncoming truck. She admitted that she saw the station wagon while she was halfway through the

turn and knew that it was closing on her. She testified that during the few seconds while she was proceeding from the middle of the intersection to the point where she had begun to accelerate east, she twice looked in her rearview mirror. She heard the truck's brakes as she completed her turn and saw and heard the actual impact which she first testified was only two car-lengths behind her. She admitted that from her view of the station wagon in the wrong lane it was apparent that it had pulled out to pass her. Her statement that in her opinion the station wagon had ample time to pull in behind her *without* braking was not supported by some of the expert testimony and by the testimony of Jungwirth.

Moreover, her actions after the collision justify a finding that she knew that she had been involved in the accident and even that she had been a contributing cause of it. She had agreed to meet at the hospital her friend who was following her. Instead of keeping the appointment she went home, discussed the accident with her husband and then with him consulted an insurance agent and an attorney. Immediately all four of them went to view the accident scene. This justifies the inference that defendant not only knew of her involvement but felt that under the circumstances she might be liable for the accident. ▮ Even if the evidence were compatible with a lack of knowledge on defendant's part that she was involved, such would not be a ground for reversal. (See *People* v. *Redrick* (1961) 55 Cal.2d 282, 289 [10 Cal.Rptr. 823, 359 P.2d 255].)

### 2. *Self-Incrimination.*

▮ Defendant contends that to have complied with section 20001 would have been a confession that she had caused the accident and hence she would have been a witness against herself under the Fifth and Fourteenth Amendments to the United States Constitution.

Similar arguments were made and rejected in *People* v. *Diller* (1914) 24 Cal.App. 799, 802 [142 P. 797], where the court said, quoting with approval from *Ex parte Kneedler,* 243 Mo. 632 [147 S.W. 983, 1913C Ann. Cas. 923, 40 L.R.A. N.S. 622], ". . . 'The mere fact that the driver discloses his identity is no evidence of guilt, but of innocence. [Citation.] On the contrary, flight is regarded as evidence of guilt.' " In *People* v. *Limon* (1967) 252 Cal.App.2d 575, 579 [60 Cal.Rptr. 448], the court stated, "The validity of the statute was established long ago." (See 8 Wigmore, Evidence (McNaughton rev. 1961) § 2259d, p. 368.)

The statute requires compliance but does not require disclosure of the motive for compliance. Defendant could have stopped to render aid and to identify herself without disclosing that she was doing so because of section 20001.

Defendant's reliance on the United States Supreme Court's recent invalidation of professional gambler registration and tax requirements is not well based. *Marchetti* v. *United States,* 390 U.S. 39 [19 L.Ed.2d 889, 88 S.Ct. 697], and *Grosso* v. *United States,* 390 U.S. 62 [19 L.Ed.2d 906, 88 S.Ct. 709 ], found compulsory self-incrimination in statutory obligations which were directed almost exclusively against a highly selective group of individuals inherently suspect of criminal activities in areas permeated with criminal statutes, thus making the statutory hazards of incrimination real and appreciable. Registration for a gambling permit is, in effect, an announcement that the one registering intends to violate state law against gambling.

A companion case, *Haynes* v. *United States,* 390 U.S. 85 [19 L.Ed.2d 923, 88 S.Ct. 722], struck down the federal firearms registration law on similar grounds. Obviously, no such rationale can be derived from section 20001 of the Vehicle Code. Section 20001 does not require that the driver involved disclose that he was involved in the accident. He merely is required to identify himself as the driver of a vehicle which was at or near the scene of the accident when it occurred.

As said in *People* v. *Diller, supra,* 24 Cal.App. at pages 802-803, again quoting from *Ex parte Kneedler, supra,* " 'The statute is a simple police regulation. It does not make the accident a crime. If a crime is involved, it arises from some other statute. It does not attempt in terms to authorize the admission of the information as evidence in a criminal proceeding. . . . In a large majority of the cases, such accidents are free from culpability. If this objection to the statute is valid, it may well be urged against the other provisions, which require the owner and chauffeur to register their names and number, and to display the number of the vehicle in a conspicuous place thereon, thus giving evidence of identity, which is the obvious purpose of the provision. [Citation.] We have several statutes which require persons to give information which would tend to support possible subsequent criminal charges, if introduced in evidence. Persons in charge are required to report accidents in mines and factories. Physicians must report deaths and their causes, giving their own names and addresses. Druggists must show their prescription lists.

Dealers must deliver for inspection foods carried in stock. We held a law valid which required a pawnbroker to exhibit to an officer his book wherein were registered articles received by him, against his objection based on this same constitutional provision. We held this to be a mere police regulation, not invalid because there might be a possible criminal prosecution in which it might be attempted to use this evidence to show him to be a receiver of stolen goods. [Citation.] If the law which exacts this information is invalid, because such information, although in itself no evidence of guilt, might possibly lead to a charge of crime against the informant, then all police regulations which involve identification may be questioned on the same ground. We are not aware of any constitutional provision designed to protect a man's conduct from judicial inquiry, or aid him in fleeing from justice.' "

3. *Statute not Vague.*

■ " ' . . . In determining whether a penal statute is sufficiently explicit to inform those who are subject to it what is required of them, the court must endeavor, if possible, to view the statute from the standpoint of a reasonable man who might be subject to its terms [citation] ; and the requirement of reasonable certainty does not prelcude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding.' " (*People* v. *Sorensen* (1968) 68 Cal.2d 280, 284 [66 Cal.Rptr. 7, 437 P.2d 495], quoting from *In re Clarke,* 149 Cal.App.2d 802, 806-807 [309 P.2d 142].)

The interpretation in *People* v. *Sell, supra,* 96 Cal.App.2d 521, 523, that "involved in an accident" means connected with that accident in a natural or logical manner is wholly reasonable and delineates anything but an unconstitutionally vague standard. It is inconceivable that a driver as a reasonable man, whose actions contributed to an immediately subsequent accident and who knew of that causal relationship, would conclude otherwise than that he was involved in that accident. The alleged examples of situations in which it could not be said that the driver of a vehicle was involved in an accident do not derogate from the application of the statute where, as in the case at bench, the driver was involved.

■ While there will be instances where a driver reasonably would not have concluded that he was probably involved and where even constructive knowledge of his involvement may not be charged to him, such possibilities do not make the statute vague.

As said in *In re Davis* (1966) 242 Cal.App.2d 645, 652-653 [51 Cal.Rptr. 702], concerning the statute there being considered, "the mere fact that different interpretations of the statute are possible does not make it unconstitutional. . . . '[T]he law is full of instances where a man's fate depends on his estimating rightly, that is, as the jury subsequently estimates it, some matter of degree.' (*Nash* v. *United States,* 229 U.S. 373, 377 [57 L.Ed. 1232, 1235, 33 S.Ct. 780]. . . .)"

A statute almost identical to section 20001 was held to have constitutional certainty in *People* v. *Thompson,* 259 Mich. 109 [242 N.W. 857]. (See also the following cases, where statutory expressions similar to the word "involved" withstood challenges based on their alleged vagueness: *Gorin* v. *United States,* 312 U.S. 19 [85 L.Ed. 488, 61 S.Ct. 429] ("connected with" or "relating to"); *Winkler* v. *United States,* 372 F.2d 74 ("each person concerned"); *Jones* v. *State,* 207 Md. 481 [115 A.2d 273] ("concerned . . . in"); *Commonwealth* v. *Paul,* 177 Pa.Super. 289 [111 A.2d 374] ("concerned in").

The judgment is affirmed.

Pierce, P. J., and Schaber, J. pro tem.,* concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 7, 1968.

*Assigned by the Chairman of the Judicial Council.