Opinion
BIGELOW, Acting P. J.
Defendant appeals from his conviction of having violated Vehicle Code section 20002, subdivision (a) (misdemeanor hit and run).[1] Defendant argues, and the People concede, that the trial court committed reversible error in failing to obtain an express waiver from the defendant of his right to a jury trial. (People v. Walker (1959) 170 Cal.App.2d 159, 165-166 [338 P.2d 536].) Defendant’s second contention on appeal is that the trial court also committed reversible error when it denied the motion for acquittal which he brought at the close of the prosecution’s case, and when it found defendant guilty at the close of his own case. The issue raised by defendant’s second ground of appeal is whether there was sufficient evidence presented at trial to support the judgment of conviction. If the evidence was insufficient, the case must be reversed and remanded to the trial court with instructions to dismiss. (People v. Pierce (1979) 24 Cal.3d 199, 209-210 [155 Cal.Rptr. 657, 595 P.2d 91].)
*Supp. 17 Because there is an attack on the sufficiency of the evidence, the facts will be set forth in some detail. On November 21, 1978, defendant parked his car, a Datsun, in a System Auto Parking Lot in Los Angeles. Later, after returning to the lot, he handed a validated ticket to the parking attendant, Mario Garceran. While defendant was handing his parking stub to the attendant, a white 1965 Rambler entered the lot. Garceran gave the driver, Barbara Hackett, a ticket, entered the car and followed defendant to his vehicle in order to obtain the additional money that he claimed to be owing. He parked the car at an angle behind defendant’s Datsun and then walked to the driver’s side of the blocked car. Defendant put his car in reverse and, in attempting to pull out of the space, struck the Rambler causing damage to it. Defendant then drove back into his stall and got out of his car. Garceran, who spoke little English, testified at trial that the defendant approached him as if to attack; Garceran therefore quickly left the area and went to speak to his supervisor.
Miss Hackett, after witnessing the collision, walked forward and asked the defendant and Garceran, “Who is going to pay for this damage because I can’t possibly afford it?” Defendant responded, “He parked your car in back of me so I couldn’t get out.” Defendant then asked Miss Hackett to move her car. After she complied with this request, defendant pulled his car out of the parking space and left the lot without stopping to give his name or address. Miss Hackett did, however, notice the vehicle’s license number as defendant left the garage. The accident resulted in approximately $136 damage to the Rambler’s rear left door.
Defendant, a retired police officer with some 30 years experience in law enforcement, testified at trial that on November 21, 1978, he parked his car in the System Auto Parking Lot. Upon returning, he presented a validated ticket to the attendant and was informed that he owed an additional $0.50. Defendant replied that he did not owe any *Supp. 18 money because the ticket had been validated. Defendant then proceeded to his car, got in and started to leave. It was a rainy day; defendant’s car was covered with moisture and the windows were fogged.
Defendant testified that as he backed out of the parking space, he heard a thump and discovered that the attendant was hitting the back of his car. He continued to back up until he felt an impact with “something solid.” After pulling forward, defendant immediately got out of his car and asked Garceran why he had blocked his path. Garceran repeated his earlier demand for an additional $0.50. Defendant responded that he did not owe anything and that because Garceran had parked where he had, the accident was his fault. Defendant further testified that Garceran seemed to understand and acknowledge his responsibility for the accident and answered affirmatively when asked whether the parking lot had insurance to cover the damage. Garceran had previously testified that he had not told the defendant or anyone else that the garage had insurance to pay for the accident.
Defendant approached Miss Hackett after the collision to ask for her name and license number. After receiving the information, he recorded it in a notebook. Defendant testified that he did not give his name to either the parking attendant or Miss Hackett because he did not think the accident was his fault. He added that Miss Hackett had not asked him for his name, address, or any other information.
Officer Rukasin testified at trial and corroborated defendant’s testimony with respect to one discrepancy in the evidence. Miss Hackett had testified that defendant had left the parking lot without asking her name. Defendant claimed that he had written her name and license number down in his notebook. Officer Rukasin testified that when the defendant came to the police station to make his statement, he brought along the notebook which contained the name and license number of the other party.
Sufficiency of the Evidence
Defendant makes two arguments with respect to the sufficiency of the evidence. First, he argues that given the discrepancies in the testimony at trial, the trier of fact should have had a reasonable doubt about the defendant’s guilt and therefore acquitted him. Through his first argument, defendant is seeking to have this court reweigh the conflicting evidence given at trial. That is not the function of an appel *Supp. 19 late court. This court must review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence which is reasonable, credible and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt. (People v. Johnson (1980) 26 Cal.3d 557, 562 [162 Cal.Rptr. 431, 606 P.2d 738].)
In the present case, the major discrepancy in the evidence involved whether Garceran had told defendant that he was responsible for the accident and that the parking lot company’s insurance could cover it. Given the fact that Garceran spoke very little English, that he testified that he quickly left the area when the defendant approached him, and that he did not tell the defendant that his company’s insurance would cover the damage, a trier of fact could have reasonably concluded that Garceran had not made the statements that defendant claimed he had. Defendant also testified at trial that he took Miss Hackett’s name and license number. This testimony was corroborated by that of Officer Rukasin and would tend to support defendant’s contention that he did not flee the area to escape liability for having caused the accident. However, even if the trier of fact believed this part of defendant’s testimony, it could have reasonably concluded that defendant should not only have taken such information from Miss Hackett, but also given his name and address and that of the owner of his vehicle as well, and that his failure to do so was a violation of Vehicle Code section 20002, subdivision (a). Thus, our examination of the record convinces us that defendant’s first contention with respect to the sufficiency of the evidence must be rejected.
General Criminal Intent—Belief as to Fault
Defendant’s second argument is that since he believed a third party had acknowledged responsibility for the accident, he did not feel that it was necessary for him to comply with the requirements of Vehicle Code section 20002, subdivision (a). Thus, the issue is raised whether a reasonable belief that one is responsible for the accident is an element of the offense with which the defendant was charged or the lack of such a belief is a complete defense thereto. The answer is that such a belief or lack thereof is neither an element nor a defense. (See CALJIC No. 16.652.)[2]
*Supp. 20 In People v. Bammes (1968) 265 Cal.App.2d 626, 631-632 [71 Cal.Rptr. 415], the court dealt with Vehicle Code section 20001 which requires a driver involved in an accident to stop, identify himself, and render assistance to anyone injured as a result of the accident. The court stated that the duties imposed upon a driver under the statute must be fulfilled whether or not he is responsible for the accident.
The regulatory purpose of Vehicle Code section 20002, subdivision (a) is to provide the owners of property damaged in traffic accidents with the information they need to pursue their civil remedies. This is also in part the purpose of section [3] Although the Vehicle Code section we consider regulates less serious accidents than section 20001, the Legislature has determined that the public will benefit from compliance with its terms. The purpose of the statute would be frustrated, and the benefits derived from it reduced if we were to hold that one could avoid compliance with section 20002 if he were able to show that he had a reasonable belief that he was not responsible for the accident. Defendant’s argument, taken to its logical conclusion, would allow at least one and possibly both drivers (if each felt he was without fault—a common occurrence) in a two-car accident to not comply with section 20002. We can not sanction such an absurd result.
By a comparison of the elements of a violation of Vehicle Code section 20001 {felony hit-and-run) to a violation of section 20002, *Supp. 21 subdivision (a) (misdemeanor hit and run) we note that only the extent of the duty to render aid to the injured person etc., in the felony section really differs from the misdemeanor section. Common to both sections are the essential elements which trigger the duty to stop and exchange information. These elements are as follows: (1) being the driver; (2) of any vehicle involved in an accident; (3) which results in damage to any property for section 20002, subdivision (a) a misdemeanor, or injury or death to another person for the felony violation.
In People v. Hamilton (1978) 80 Cal.App.3d 124 [145 Cal.Rptr. 429], the essential elements for the felony violation were held to be (1) involvement in an accident, (2) resulting in injury (or death) to another, (3) knowing that he had been involved in such an accident, (4) in which injury (or death) had occurred or that the accident was of such a nature that a reasonable average man would reasonably anticipate the accident resulted in injury to another, and finally, (5) knowingly leaving the scene of the accident without the giving of the required information and rendering the required aid or assistance.
In a section 20002, subdivision (a) violation the essential elements are the same or similar and by analogy to the holding in Hamilton, supra, as applied to the facts of the case at bench, we hold that the following elements were supported by substantial evidence in the trial, to wit: (1) that the defendant knew he had been involved in an accident, (2) which he knew resulted in damage to the other vehicle and that, (3) he knowingly and willfully left the scene of the accident (4) without giving the required information (his name and address and that of the owner of the vehicle).
We agree with the wording of CALJIC No. 16.650 (1979 rev.)[4] to the effect that the failure to give the required information to the oth *Supp. 22 er person involved must be willful. That is, for example, it would not be willful if the accused person were transported by ambulance from the scene in an unconscious condition. The element of willful failure to give the required information at the scene then makes this crime one requiring only general criminal intent as described in CALJIC No. [5] The other elements of knowing that he had been involved in an accident and knowing that damage to the other vehicle had resulted from the accident are necessary mental states as set forth in CALJIC No. 3.31.5.[6] We realize that the trial in our case at bench was by the court without a jury, but the CALJIC instructions referred to in this opinion correctly and succinctly set forth the applicable law.
Finally defendant argues that he should not have had to identify himself because Miss Hackett, the owner of the damaged automobile, had not asked for his name or address. This argument is without merit. First, there is evidence in the record to believe that Miss Hackett had little time in which to ask for the information. Second, there is simply no requirement in the statute that the owner of the damaged property must ask for the driver’s name and address; on the contrary, the statute contemplates voluntary compliance by each driver.
We conclude, therefore, that because the trial court failed to obtain an express waiver from the defendant of his right to a jury trial, defendant is entitled to a new trial. However, since there is substantial *Supp. 23 evidence in the record to support the trial court’s decision, defendant’s challenge to the sufficiency of the evidence must be rejected.
The judgment is reversed.
Saeta, J., and Fainer, J., concurred.

Section 20002: “(a) The driver of any vehicle involved in an accident resulting in damage to any property including vehicles shall immediately stop the vehicle at the scene of the accident and shall then and there either:
“(1) Locate and notify the owner or person in charge of such property of the name and address of the driver and owner of the vehicle involved, or;
*Supp. 17 “(2) Leave in a conspicuous place on the vehicle or other property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and a statement of the circumstances thereof and shall without unnecessary delay notify the police department of the city wherein the collision occurred or, if the collision occurred in unincorporated territory, the local headquarters of the Department of California Highway Patrol.
“Any person failing to comply with all the requirements of this section is guilty of a misdemeanor and upon conviction thereof shall be punished by imprisonment in the county jail for not to exceed six months or by a fine of not to exceed five hundred dollars ($500) or by both.”

CALJIC No. 16.652: “The duties imposed by law upon the driver of a vehicle involved in an accident resulting in damage to property are not affected by the cause of or the blame for, the accident.
“If such a driver wilfully fails to perform any of the duties imposed upon him, he is *Supp. 20 guilty of a misdemeanor, whether the accident was caused by his own or another’s negligence, or by the concurrent negligence of two or more persons, or was unavoidable.”

Section 20001: “The driver of any vehicle involved in an accident resulting in injury to any person, other than himself, or death of any person shall immediately stop the vehicle at the scene of the accident and shall fulfill the requirements of Sections 20003 and 20004.
“Any person failing to comply with all the requirements of this section under such circumstances is guilty of a public offense and upon conviction thereof shall be punished by imprisonment in the state prison, or in the county jail for not to exceed one year or by fine of not to exceed five thousand dollars ($5,000) or by both.”
Section 20003: “The driver of any vehicle involved in an accident resulting in injury to or death of any person shall also give his name, address, the registration number of the vehicle he is driving, the name of the owner, and upon request and if available exhibit his driver’s license to the person struck or the driver or occupants of any vehicle collided with or shall give such information and exhibit his license to any traffic or police officer at the scene of the accident and shall render to any person injured in the accident reasonable assistance, including the carrying or the making arrangements for the carrying of such person to a physician, surgeon or hospital for medical or surgical treatment if it is apparent that treatment is necessary or if such carrying is requested by the injured person.”

CALJIC No. 16.650 (1979 rev.): “The driver of any vehicle knowingly involved in an accident resulting in damage to any property, including vehicles, other than his own, is required to perform the following duties:
“1. He shall immediately stop the vehicle at the scene of the accident, and
“2. He shall locate and notify the owner or person in charge of such property of the name and address of the driver and owner of the vehicle involved; or he shall leave in a conspicuous place on the vehicle or property damaged a written notice giving the name and address of the driver and of the owner of the vehicle involved and, in addition, a statement of the circumstances of the accident, and shall without delay notify the police department of the city where the collision occurred, or, if it occurred in unincorporated territory, the local headquarters of the California Highway Patrol.
“The willful failure of the driver of a vehicle involved in an accident resulting in damage to property or a vehicle to perform either one of the foregoing duties is a misdemeanor, but, before the jurors may return a verdict of guilty, they must not only [June 1980]
*Supp. 22 agree that the defendant failed to perform one or both of the foregoing duties but they also unanimously must agree on at least one particular duty that he failed to perform.
“The word ‘knowingly’ means that the driver of the vehicle involved knew that a collision had occurred, knew that he was involved in the accident and either knew that the collision resulted in damage to property or knew that it was of such a nature that it was probable that it resulted in damage to property.
“[The word ‘involved’, as used in this instruction, means being connected with an accident in a natural or logical manner. To be ‘involved in an accident’ does not require that a vehicle collide with another vehicle or a person.]”

CALJIC No. 3.30 (1979 rev.): “In the crime[s] charged in Count[s] —, —, and — of the information [namely,] —, —, and —, there must exist a union or joint operation of act or conduct and general criminal intent. To constitute general criminal intent it is not necessary that there should exist an intent to violate the law. When a person intentionally does that which the law declares to be a crime, he is acting with general criminal intent, even though he may not know that his act or conduct is unlawful.”

CALJIC No. 3.31.5: “In [each of] the crime[s] charged in [Count[s] —, — and — of] the information [namely, —, — and —,] there must exist a union or joint operation of act or conduct and a certain mental state in the mind of the perpetrator and unless such mental state exists the crime to which it relates is not committed.
“In the crime of —, the necessary mental state is —.”