[Nos. F057633, F059101. Fifth Dist. May 27, 2011.]

THE PEOPLE, Plaintiff and Respondent, v.
ROGER ISAAC GUZMAN, Defendant and Appellant.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of parts II. and III. of the Discussion.

**1398**

Counsel

Christine Vento, under appointment by the Court of Appeal, for Defendant and Appellant.

Edmund G. Brown, Jr., Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez, Lloyd G. Carter and Leanne LeMon, Deputy Attorneys General, for Plaintiff and Respondent.

Opinion

**CORNELL, J.**—A jury convicted appellant Roger Isaac Guzman of violating Harbors and Navigation Code sections 655, subdivision (a), 655.2, and 656.2.[1] Guzman and Thomas Christopher Kirby[2] were the occupants of a motorboat driven by Guzman that struck and severely injured an 11-year-old boy on Shaver Lake in 2006. They did not stop to render assistance but instead continued on to the marina, where they later told deputies they had not been involved in the accident and claimed they had been on the pontoon boat that stopped and rendered assistance. Both Guzman and Kirby had been drinking alcoholic beverages the day of the accident.

Guzman contends his constitutional right against self-incrimination was violated prejudicially by the trial court's instruction to the jury on the section 656.2 offense, which stated he was required to identify himself to law enforcement officers as the operator of the motorboat that had struck the boy. Guzman argues the error requires reversal of his conviction.

Guzman also claims his constitutional rights were violated when the prosecutor misstated the law in closing argument in the trial by stating that Guzman's voluntary intoxication could not be considered in determining whether Guzman knew or should have known he had hit the child. Guzman contends the prosecutor's misstatement requires reversal.

---

[1] All further statutory references are to the Harbors and Navigation Code unless otherwise stated.

[2] Kirby's appeal was before this court in *People v. Kirby* (May 27, 2011, F058793) (nonpub. opn.).

■ We conclude section 656.2 is analogous to Vehicle Code section 20003. Section 656.2 does not make it a crime for an operator of a boat to be involved in a boating accident; the gravamen of the criminal offense arises when the operator fails to stop and render assistance or fails to identify himself as such to the victim and peace officers. We publish our discussion of this conclusion as there is no published decision concerning the issue.

We further conclude the prosecutor did not commit prejudicial misconduct. The trial court instructed the jury to consider voluntary intoxication in deciding whether Guzman had knowledge that he had been involved in a collision.

Guzman also appealed from the restitution order, but failed to brief this issue, so we will disregard any attack on the order.

We will affirm the judgment.

### FACTUAL AND PROCEDURAL SUMMARY

As the contentions made by Guzman are legal issues, we will leave out many facts, but nothing significant.

On September 2, 2006, Lynn and Jeff McEntire went to Shaver Lake with their two children and some family friends. The group traveled across the lake to a cove, arriving about 11:30 a.m. Jeff and the others took personal watercraft out onto the lake several times throughout the day.

Guzman, Kirby, and several friends, including the Peffer family, also were at Shaver Lake that day at a cove near the McEntires. About 4:25 p.m. Guzman and Kirby headed out from the cove in Guzman's white and yellow motorboat. Guzman was driving, or operating, the boat; he was wearing a red shirt. Kirby was not wearing a shirt, thus revealing a tattoo on his upper shoulder. There were no other yellow and white boats in the area when Guzman and Kirby headed out.

About 4:30 p.m., the victim was on a kneeboard and being pulled by a personal watercraft piloted by his father, Jeff. Jeff's passenger was acting as a spotter or flagman. The victim was tiring and Jeff began heading back into the cove. As he was heading back, Jeff saw a motorboat accelerating as it came out of the cove. The boat was travelling between 35 and 40 miles per hour. The boat then made a sharp turn and headed directly toward Jeff and the victim.

Jeff stood up, shouted, and waved his arms in an attempt to get the attention of the people on the motorboat. The motorboat continued on its path

towards him and the victim, never decreasing speed. The motorboat hit the victim; he was not moving. Jeff jumped into the water to help his son and yelled for assistance. Jeff's friend, Ross Kelly, came over to assist.

Three women, Rocio Pena, Rocio Alvarez, and Kathy Arroyo, helped get the victim out of the water and into their small aluminum fishing boat. Kenneth and May Peffer, who were on a large pontoon boat, saw Pena and the other women yelling and waving for help and went to the scene. The victim was transferred from the fishing boat to the pontoon boat.

Kenneth and May estimated the victim was 100 to 150 feet from shore when he was hit. Everyone assisting the victim was yelling to the people on shore to call 911. Kenneth noted it would have been nearly impossible for someone to be in the area and not notice the commotion at the site of the collision.

The victim was taken to Sierra Marina on the pontoon boat, with Jeff and another man rendering first aid. From there, the victim was transferred to an ambulance for transportation to Valley Children's Hospital.

Deputy Sheriffs William Heuer and Christopher Tullus were at the marina when the pontoon boat arrived. Jeff described for the deputies the motorboat that had hit his son. The motorboat was white on the bottom, with a yellow stripe on both sides, and had a wakeboard tower with yellow speakers attached to the tower. Jeff saw two people on the motorboat. The operator had long dark hair and was wearing a red shirt, and the passenger had a circular tattoo on his right shoulder. Both Jeff and Kelly identified Guzman's boat in a later photographic lineup as the boat that hit the victim.

According to Alvarez, who had been on the aluminum fishing boat, the collision when the victim was hit produced an audible sound that could be heard clearly. The collision caused the motorboat to fishtail. The motorboat continued on for a short way, then stopped. The passenger went to the back of the motorboat and lifted the motor. The operator of the motorboat also came back to look. The passenger and operator talked to each other while Pena, Alvarez, and Jeff were screaming at them to help the child. Pena watched as the two men looked at where the child was in the water and then went to the front of the boat and headed for Sierra Marina.

Heuer and Tullus went out in their marked patrol boat to look for the motorboat that had hit the victim. As the deputies were leaving the marina, Heuer saw a boat in a slip matching the description. As Heuer was checking the CF number (vessel registration number) of the motorboat, Guzman and Kirby approached him and spontaneously stated that the boat looked like the

one that hit the boy, but that their boat had not hit the boy. They told the deputies they had been part of the group on the pontoon boat that had helped the child after the collision. The two men provided Heuer with their names, dates of birth, and telephone numbers.

When the victim arrived at the hospital, he was bleeding and had brain matter coming out of his forehead in the area between his eyes. He sustained fractures to the back of his head, from his forehead to the bridge of his nose, across his nose, and internal fractures to his skull. As a result of being hit by the motorboat, the victim suffered a brain injury and lost vision in one eye. Dr. Peter Witt opined that the injuries were consistent with being struck by a propeller.

On September 17, 2006, Guzman's boat was seized. The propeller was examined by Harold Kindsvater, who had extensive experience manufacturing and repairing propellers. The propeller attached to the motorboat had a bend in one blade; it would have taken a tremendous amount of force to cause the bend. The damage could not have come from hitting a rock or wood because there was no damage to the paint surface. Kindsvater stated the shaft of the propeller also had a bend in it. Based on the bend in the propeller blade and the bend in the shaft, Kindsvater opined that a person inside the boat would have felt a jolt when the damage occurred.

Guzman was interviewed by sheriff's detectives on September 17, 2006. Guzman stated he was the only person who had driven his yellow and white boat that weekend. He admitted owning a red shirt and keeping it in the boat, but claimed he did not wear the shirt on September 2. He acknowledged drinking about six beers that day. Guzman claimed the pontoon boat left the cove before he did. Guzman stated that even when the bow of the boat is up, he can see in front of the boat. He stated it would not be possible for him to have hit someone and not know it. He denied hitting anyone with the boat that day.

Guzman was charged with violating sections 655, subdivision (a), using a boat in a reckless or negligent manner so as to endanger the life, limb, or property of another person, and 655.2, excessive speed by a boat in specified restricted areas. He also was charged with violating section 656.2, which requires the operator of a boat to stop and render assistance and provide identifying information when there has been an accident causing injury. A jury found Guzman guilty of violating sections 655, subdivision (a) and 655.2, but was unable to reach a verdict on the section 656.2 violation.

A second jury trial on the section 656.2 charge commenced February 23, 2009, and on March 26 the jury found Guzman guilty. On April 24, the trial

court sentenced Guzman to a term of two years in state prison for violating section 656.2. Guzman received a concurrent term of 365 days for the section 655, subdivision (a) and section 655.2 convictions. At the October 15, 2009, restitution hearing, Guzman was ordered to pay $1,101,841.04 in restitution to the victim and his parents.

Guzman filed an appeal challenging his culpability for the accident in case No. F057633. He filed a separate appeal challenging the restitution order in case No. F059101. On Guzman's motion, this court ordered the appeals consolidated under case No. F057633 and directed briefs be filed in the consolidated appeal.

## DISCUSSION

Guzman makes two contentions concerning the section 656.2 conviction. First, he claims the jury instruction defining the section 656.2 offense violated his constitutional rights because the written instruction stated the operator of a vessel is required to identify himself as the operator of the vessel involved in the collision. Second, Guzman argues the prosecutor misstated the law in closing argument and the misstatement violated his constitutional rights.

Guzman did not challenge the restitution order in his briefs.

## I. *Section 656.2 Instruction*

There is no pattern instruction for the section 656.2 offense. The trial court instructed the jury with a modified version of CALCRIM No. 2140, which is designed to instruct on vehicular accidents. Guzman contends the modified instruction violated his constitutional right against self-incrimination. We disagree.

### *Factual summary*

The modified CALCRIM No. 2140 written instruction read as follows:

"The defendant is charged in Count One with failing to perform a legal duty following a collision involving a vessel that caused injury to another person in violation of Harbors and Navigation Code Section 656.2.

"To prove that the defendant is guilty of this crime, the People must prove that:

"1. The defendant, while operating a vessel, was involved in a collision;

"2. The collision caused injury to someone else;

"3. The defendant knew that he had been involved in a collision[;]

"4. The defendant knew another person was injured in the collision, or knew from the nature of the collision that it was probable that another person had been injured;

"AND

"5. The defendant willfully failed to perform one or more of the following duties:

"(a) To stop immediately at the scene of the collision;

"(b) To provide reasonable assistance to any person injured in the collision;

"(c) To give to the person injured or the occupants of any vessel involved in the collision or any peace officer at the scene of the collision all of the following information: His name and current residence address;

"AND

"The registration number of the vessel he was operating.

"Someone commits an act willfully when he does it willingly or on purpose. It is not required that he intend to break the law, hurt someone else, or gain any advantage.

"The duty to stop immediately means that the operator must stop his vessel as soon as reasonably possible under the circumstances.

"To provide reasonable assistance means the operator must determine what assistance, if any, the injured person needs and make a reasonable effort to see that such assistance is provided, either by the operator or someone else. Reasonable assistance includes transporting anyone who has been injured for medical treatment, or arranging the transportation for such treatment, if it is apparent that treatment is necessary or if an injured person requests transportation. An operator is not required to provide assistance that is unnecessary or that is already being provided by someone else. However, the requirement that an operator provide assistance is not excused merely because bystanders are on the scene or could provide assistance.

"The operator of a vessel must perform the duties listed regardless of who was injured and regardless of how or why the collision happened. It does not matter if someone else caused the collision or if the collision was unavoidable.

"*When providing his name and address, the operator is required to identify himself as the operator of a vessel involved in the collision.*

"You may not find the defendant guilty unless all of you agree that the People have proved that the defendant failed to perform at least one of the required duties. You must all agree on which duty the defendant failed to perform." (Italics added.)

Prior to instructing the jury, the trial court inquired if defense counsel had any "objection to the proposed instructions in that final wording," to which defense counsel responded, "No." The trial court and defense counsel discussed the modified CALCRIM No. 2140 instruction, including specifically discussing the provision requiring the operator of the vessel to identify himself as the operator. The trial court noted that defense counsel had submitted a proposed version that included this provision twice; the trial court listed the provision once.

Later, when the trial court verbally instructed the jury, the italicized portion of the instruction was omitted. The trial court informed the jury it would receive a written copy of all instructions given. The written version of the modified CALCRIM No. 2140 instruction included the language stating section 656.2 required the operator of the vessel to identify himself as the operator of a vessel involved in a collision.

*Analysis*[3]

 In determining whether disclosure of information threatens self-incrimination, several factors are considered, including (1) whether the disclosure targets a highly selected group inherently suspect of criminal activities, rather than the public at large, and (2) whether the requirement involves an area permeated with criminal statutes rather than an essentially regulatory area of inquiry. (*California v. Byers* (1971) 402 U.S. 424, 429 [29 L.Ed.2d 9, 91 S.Ct. 1535] (*Byers*).)

In *Byers*, the United States Supreme Court upheld Vehicle Code section 20002, which requires drivers of motor vehicles involved in accidents to stop at the scene of the accident and provide their names and addresses. The

---

[3] As we resolve the merits of Guzman's argument adversely to Guzman, we will not discuss the People's claim of invited error.

United States Supreme Court determined that the statute in question was "essentially regulatory, not criminal." (*Byers, supra*, 402 U.S. at p. 430.) The *Byers* court stressed that California law did not make it a criminal offense to be " 'involved in a vehicle accident.' " (*Id.* at p. 431.) "Although identity . . . may lead to inquiry that in turn leads to arrest and charge, those developments depend on different factors and independent evidence." (*Id.* at p. 434.)

Because there is no pattern instruction for section 656.2 offenses, the trial court gave a modified version of CALCRIM No. 2140, which addresses various Vehicle Code violations, including Vehicle Code sections 20001, 20003, and 20004. The Bench Notes to CALCRIM No. 2140 state that the paragraph requiring the driver to identify himself or herself as such should be given "if there is evidence that the defendant stopped and identified himself or herself but not in a way that made it apparent to the other parties that the defendant was the driver." (Judicial Council of Cal., Crim. Jury Instns. (2011) Bench Notes to CALCRIM No. 2140, p. 173.)

The Bench Note to CALCRIM No. 2140 cites the case of *People v. Kroncke* (1999) 70 Cal.App.4th 1535 [83 Cal.Rptr.2d 493] (*Kroncke*) as authority for this language in the instruction. In *Kroncke*, the defendant was driving his vehicle on the freeway when his passenger suddenly jumped out of the moving vehicle, sustaining fatal injuries. The defendant continued driving and got off at the next freeway exit. (*Id.* at p. 1539.) The defendant returned to the scene of the accident about the time the police arrived. (*Id.* at pp. 1539–1540.) The defendant told officers he was driving when he saw the victim's body lying on the side of the road and that he did know how the victim had been injured. He gave law enforcement his name and address. (*Id.* at p. 1540.) Several weeks after the accident, the defendant contacted the officer in charge of the case and explained that he had been driving his vehicle when the victim jumped out of the car. (*Id.* at p. 1541.) The defendant was charged with violating Vehicle Code sections 20001 and 20003, the "hit-and-run" statutes. (*Kroncke*, at p. 1538.)

The jury in *Kroncke* was instructed, over defense objection, that Vehicle Code sections 20001 and 20003 impose a duty on the driver of a vehicle involved in an accident to disclose to the investigating officer that he or she was the driver of the vehicle. (*Kroncke, supra*, 70 Cal.App.4th at p. 1543.) On appeal, the defendant asserted that this violated his Fifth Amendment privilege against self-incrimination. (*Kroncke*, at pp. 1548–1549.)

The appellate court in *Kroncke*, relying on *Byers*, held that the "privilege against self-incrimination does not relieve a California driver of his duty to comply with the reporting requirements of [Vehicle Code] sections 20001 and 20003, including his duty to identify himself as the driver of a vehicle

involved in the accident." (*Kroncke, supra,* 70 Cal.App.4th at p. 1557.) This is so because the hit-and-run statutes essentially are regulatory schemes that are not aimed at identifying criminal behavior. (*Id.* at p. 1549.)

Prior to *Kroncke,* this court, in *People v. Monismith* (1969) 1 Cal.App.3d 762 [81 Cal.Rptr. 879], held that a driver of a vehicle involved in an accident was under a duty to identify himself or herself as the driver of the vehicle in order to comply with Vehicle Code section 20001. (*Monismith,* at p. 766.) We concluded that providing information without identifying one's self as the driver of the vehicle involved in an accident was insufficient to satisfy the statute and that providing such information was "[o]ne of the duties that accompanies the right and the privilege of driving a vehicle upon a public thoroughfare." (*Ibid.*) We rejected the defendant's claim that identifying himself as the driver infringed upon his Fifth Amendment rights. (*Monismith,* at p. 767.)

Section 656.2 provides: "In addition to the requirements of Section 656.1, the operator of any vessel involved in an accident in the waters of this state who knows or has reason to know that the accident resulted in injury to any person shall furnish his or her name, address, and the registration number of the vessel, and the name of the owner, to the person injured, or occupant of any other vessel involved, or shall furnish that information to any peace officer at the scene of the accident, and shall render to any injured person reasonable assistance, including transportation for medical treatment if required or requested by the injured person, so far as the operator can do so without serious danger to the vessel or passengers."

Section 656.2 was enacted by Senate Bill No. 1509 during the 1985–1986 Regular Session of the Legislature (Senate Bill No. 1509). (Stats. 1986, ch. 877, § 4, p. 3030.) Senate Bill No. 1509 was designed to bring the Harbors and Navigation Code provisions regarding boating accidents into alignment with the Vehicle Code provisions on automobile accidents. The legislative history for section 656.2 is replete with references to this intent.

An Assembly Ways and Means Committee analysis stated that it would "require boat operators at the scene of a boating accident to respond in a manner essentially the same as if it were an auto accident and would impose criminal penalties for a violation of these provisions." (Assem. Com. on Ways and Means, Analysis of Sen. Bill No. 1509 (1985–1986 Reg. Sess.) as amended Aug. 11, 1986.)

An analysis by the Senate Committee on the Judiciary specifically referenced the hit-and-run provisions of the Vehicle Code and stated: "Generally, the penalties are modeled after the 'hit-and-run' penalties in the Vehicle

Code." (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 1509 (1985–1986 Reg. Sess.) as amended Feb. 26, 1986, p. 5.) A factsheet on Senate Bill No. 1509 also stated the rationale for the legislation as: "Existing law in this area is brief and should be conformed to reporting requirements for accidents involving motor vehicles."

A Department of Parks and Recreation analysis stated: "The bill would conform legal responsibilities of operating a vessel with those of driving an automobile." (Cal. Dept. of Parks and Recreation, Analysis of Sen. Bill No. 1509 (1985–1986 Reg. Sess.) as introduced, p. 2.)

■ The plain language of section 656.2 makes clear that it is the *operator* of a vessel involved in an accident who is required to provide specified information to any person injured in the accident or to law enforcement. Section 656, subdivisions (e) and (f) ensure that any information provided to law enforcement about the accident is without prejudice to the person providing the information and cannot be "referred to in any way, or be any evidence of due care of any party." (*Id.*, subd. (e).) No criminal liability arises from complying with section 656.2. Criminal liability arises solely from the failure to comply with the reporting requirements of section 656.2. (§ 668, subd. (c)(1).)

Guzman relies on the holding in *People v. Bammes* (1968) 265 Cal.App.2d 626, 635 [71 Cal.Rptr. 415] to support his argument. *Bammes* held that an operator of a vessel involved in an accident need not disclose that he was the operator. We disagree with that holding. *Bammes* is an appellate court decision from the Third Appellate District that predates the United States Supreme Court's decision in *Byers* and our own decision in *Monismith*. Both *Byers* and *Monismith* held that a driver or operator must identify himself as such in order to comply with the reporting statutes and that doing so does not infringe on a person's Fifth Amendment rights.

We also reject Guzman's attempts to distinguish *Byers* and *Kroncke*. Guzman emphasizes that *Byers* and *Kroncke* addressed the Vehicle Code, not the Harbors and Navigation Code. *Byers* addressed a code provision that required reporting in accidents involving property damage, not personal injury. The accident in *Kroncke*—a passenger leaping from a car—could not have given rise to criminal liability on the part of the driver. These distinctions are not relevant to the analysis of whether the reporting requirements of the Harbors and Navigation Code are regulatory in nature and thus do not implicate the Fifth Amendment privilege. The legislative history is *overwhelming* that section 656.2 is designed as a regulatory measure, that it is modeled after the Vehicle Code reporting provisions, and that making a report and providing the required information imposes no criminal liability or

consequences. As with the Vehicle Code provisions, criminal consequences arise from failure to comply with the Harbors and Navigation Code reporting provisions.

Guzman's attempt to distinguish the *Monismith* case also is rejected. Guzman's case is factually very similar to *Monismith*. As did the defendant in *Monismith*, Guzman initially lied to law enforcement. (*Monismith, supra*, 1 Cal.App.3d at p. 767.) Although Guzman consistently denied he was operating the vessel that struck the child, he also affirmatively lied to law enforcement when he stated he had been on the pontoon boat that stopped to render aid to the child. As did the defendant in *Monismith*, Guzman also provided some information to law enforcement but withheld certain other information. (*Ibid.*) As we said in *Monismith*: "It is one thing to refuse to give information upon the ground of Fifth Amendment privilege, and quite another to give partial information and false information and, later, when caught in the toils of deception, to assert immunity under the Fifth Amendment." (*Ibid.*)

### Conclusion

The gravamen of the offense of a vehicular hit and run is leaving the scene of an accident without rendering aid or providing identifying information. The Vehicle Code does not make it a crime to be involved in an accident. (*People v. Escobar* (1991) 235 Cal.App.3d 1504, 1509 [1 Cal.Rptr.2d 579].) Senate Bill No. 1509 aligned the Harbors and Navigation Code provisions on boating accidents to those of the Vehicle Code, including the hit-and-run provisions.

 Consistent with the holdings of *Byers, Kroncke*, and *Monismith*, we conclude that Guzman's Fifth Amendment rights were not violated by section 656.2 because the information required to be reported, including that one is the operator of the vessel involved in the accident, is regulatory in nature and does not give rise to any criminal liability. Criminal liability arises from failure to comply with the reporting requirements. (§ 668, subd. (c)(1).)

II., III.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

---

*See footnote, *ante*, page 1396.

## DISPOSITION

The judgment is affirmed.

Levy, Acting P. J., and Franson, J., concurred.

Appellant's petition for review by the Supreme Court was denied September 14, 2011, S194698.